(84 Misc. Rep. 511)

### In re CARLISLE, State Highway Commissioner.

(Supreme Court, Special Term, Onondaga County.　March 7, 1914.)

HIGHWAYS (§ 124*)—MAINTENANCE—TAXATION.

Highway Law (Consol. Laws, c. 25) § 134, provides that on completion of a highway, and after filing the notice required, the highway shall be deemed to have been accepted by the board of supervisors of the county, and thereafter it would be maintained as provided in such charter. *Held*, that the maintenance of a highway which is to be "thereafter" exercised under such section has no bearing on the raising of funds with which to pay for such maintenance, and where a statement in October, 1912, specifying the number of miles of state and county highways in each town and the amount required to be paid for maintenance thereof for the year 1913, was transmitted to the clerk of the board of supervisors, as required by section 172, and on December 18, 1912, notice was given pursuant to section 134 that the county highways in question had been accepted, the board of supervisors was not authorized to refuse to include a tax for the maintenance and repair of the roads for 1913 in the tax levy, because the highways had not been accepted on December 15, 1912, when the tax levy for that year was made.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 381; Dec. Dig. § 124.*]

Application by John N. Carlisle, as State Commissioner of Highways, for writ of mandamus against the Board of Supervisors of Onondaga County. Writ granted.

Thomas Carmody, Atty. Gen. (James J. Barrett, and Edward G. Griffin, Deputy Attys. Gen., of counsel), for petitioner.

Herbert L. Smith, Co. Atty., of Syracuse, opposed.

CROUCH, J. It is sought to compel the board of supervisors of Onondaga county, pursuant to section 172 of the Highway Law, to cause the sum of $900 to be raised by certain towns of Onondaga county for the maintenance and repair of county highways.

In the fall of 1912 four highways running through six towns of Onondaga county were completed, or nearing completion, two being state and two county highways. Under date of October 15, 1912, and on or about October 28, 1912, a statement, specifying the number of

miles of state and county highways in each town and the amount which each town was required to pay on account of the maintenance for the year 1913, was transmitted to the clerk of the board of supervisors, as required by section 172 of the Highway Law. On the 18th of December, 1912, notice was given pursuant to section 134 of the Highway Law that the county highways in question would be accepted. On the 27th of December, 1912, the two state highways were accepted, and on January 8, 1913, the two county highways were accepted. The general tax levy was made by the board of supervisors, as required by law, on December 15, 1912, but included no tax for maintenance and repair for the year 1913, nor has any tax for that year been included in subsequent levies. The board claims that, inasmuch as the highways had not been accepted on December 15, 1912, when the tax levy for that year was made, it had no power or authority to cause the towns in question to pay the statutory maintenance tax for the year 1913. This contention, so far at least as the county highways are concerned, seems to rest largely upon the following provision of section 134 of the Highway Law:

"Upon the proper completion of such highway or section thereof and after filing the notice above given it shall be deemed to have been accepted by the board of supervisors of such county and *thereafter* it shall be maintained as provided in this chapter."

Assuming that the board has discretion in such a case, I do not think the maintenance which is to be "thereafter" exercised under section 134 has anything to do with the raising of the fund which is to pay for such maintenance. The intent of the statute seems to be to fix the point of time when it becomes the duty of the public officials physically to maintain and repair and to expend public moneys for that purpose. Up to that point the duty rests with the contractor. The statute does not prevent the levy of a tax to be paid to the credit of the fund out of which the expense of maintenance and repair for the forthcoming year is to be paid. In the present instance the towns had the benefit and use of the highways in question substantially the entire year, and should be willing to pay their proportion to the credit of the fund.

The creation and maintenance of an improved highway system is a great governmental undertaking. I think the commissioner of highways should be and is vested with as much discretion as he has sought to exercise in the instances here involved. In any event the duty of the board of supervisors was, under section 172, merely ministerial. Having received the statement, it should have proceeded as directed.

The writ prayed for may issue.